Attachment "C"

## Summary of the Cause of Action

This action involves Defendants Midtown Haven, Inc. and Faisal M. Shaikh's alleged violations of the Communications Act of 1934, as amended, Title 47 U.S.C. § 605, *et seq.*, and the Cable & Television Consumer Protection and Competition Act of 1992, as amended, Title 47 U.S.C. § 553, *et seq.*, which Plaintiff alleges was done through the Defendants' unauthorized interception and publication of a program to which the Plaintiff held exclusive distribution rights. In particular, *Floyd Mayweather, Jr. v. Marcos Rene Maidana, II – World Lightweight Championship Fight Program* was shown at Defendants' commercial establishment, Sutra Lounge, on September 13, 2014, and Plaintiff was not paid the commercial sublicensing fee for the fight program which was shown at Sutra Lounge.

## Relevant Rules, Regulations, Statutes, Ordinances and Case Law

47 U.S.C. § 553, *et seq.* and 407 U.S.C. § 605, *et seq.*

47 U.S.C §§ 553 and 605 are strict liability statutes. *See Joe Hand Promotions, Inc. v. Double Down Entm't, L.L.C.,* 2014 U.S. Dist. LEXIS 32609, at *8 (D.S.C. Mar. 13, 2014); *J&J Sports Prods. v. Delgado,* 2012 U.S. Dist. LEXIS 13377 (E.D. Cal. Feb. 3, 2012); *Joe Hand Promotions, Inc. v. Kinder,* 2012 U.S. Dist. LEXIS 162738 (N.D. Okla. Nov. 13, 2012). "As a strict liability statute, to

prove a violation, [Plaintiff] need only show that the Event was shown in Defendant's establishment without its authorization." *J & J Sports Productions, Inc. v. Moctezuma Club, Inc.,* 2012 WL 2358254, *2 (N.D.Tex. June 21, 2012).

47 U.S.C. § 605 allows for enhanced damages for willful violations. "Willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference for its requirements.'" *Comcast of Ill. X v. Multi-Vision Elecs., Inc.,* 491 F.3d 938, 948 (8th Cir. 2007) (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 127, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)); *Time Warner Entertainment/Advance-Newhouse Pshp. v. Worldwide Elecs, L.C.,* 50 F. Supp. 2d 1288, 1301 (S.D. Fla. 1999). This standard encompasses knowing violations of a statutory requirement, as well as reckless ones. *See Comcast of Ill. X.,* 491 F.3d at 947 (upholding an award of enhanced damages under § 553, stating that the defendants' "actions showed reckless disregard of the statutory requirements"). Court held that holding an encrypted satellite program "cannot be intercepted without engaging in a willful act." *J&J Sports Prods., Inc. v. Kosoria,* No. 06-CV-2102 KMK, 2007 U.S. Dist. LEXIS 40246, at *9 (S.D.N.Y. June 1, 2007).

Courts have found violations of 47 U.S.C. §§ 553 and 605 via the internet. *See J & J Sports Prods., Inc. v. Vega,* No. 5:15-CV-5199, 2016 U.S. Dist. LEXIS

102521, 2016 WL 4132290, at *4 (W.D. Ark. Aug. 2, 2016) (holding that it is irrelevant whether a signal was sent over the internet or through another medium, because the internet receives information via wire); *J & J Sports Prods., Inc. v. Jaschkowitz*, No. 5:14-CV-440, 2016 U.S. Dist. LEXIS 60326, 2016 WL 2727015, at *4 (E.D. Ky. May 6, 2016) (holding karaoke bar defendants liable for violation of section 605 where the defendants streamed a fight onto a projection screen without a license); *J & J Sports Prods., Inc. v. Sandana*, No. 1:13-CV-842, 2014 U.S. Dist. LEXIS 100538, 2014 WL 3689283, at *4 (E.D. Cal. July 23, 2014) (holding that a question of fact remained as to whether a bar could be held liable under section 553 or 605 where a bar publicly exhibited a licensed boxing event without a license and where it appeared that a patron had streamed the fight over the internet).

*KingVision Pay Per View, Ltd. v. Williams*, 1 F.Supp.2d 1481 (S.D.Ga. 1998) (Defendant found to be in violation of 47 U.S.C. § 605 after paying the residential/noncommercial rate for the fight program and displaying the program to her establishment's patrons).

The standard for vicarious liability for an agent of a corporation is whether the defendant had the right or ability to supervise or control the unauthorized activities and that the individual received some commercial benefit from this

violation. *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009).

## Damages

1.    (a) Statutory damages for violation of 47 U.S.C. § 605

   (b) $10,000.00

   (c) 47 U.S.C. § 605(e)(3)(C)(i)(I)

2.    (a) Statutory damages for violation of 47 U.S.C. § 553

   (b) $10,000.00

   (c) 47 U.S.C. § 553 (c)(3)(A)(ii)

3.    (a) Enhanced (punitive) damages for violation of 47 U.S.C. § 605

   (b) $100,000.00

   (c) 47 U.S.C. § 605(e)(3)(C)(ii)

4.    (a) Attorney's Fees for violation of 47 U.S.C. § 605

   (b) To be Determined

   (c) 47 U.S.C. § 605(e)(3)(B)(ii)

## ATTACHMENT "D"

Midtown Haven, Inc. d/b/a Sutra Lounge is a domestic for-profit corporation operating a nightclub at 1136 Crescent Avenue, Atlanta, Georgia. Faisal Shaikh and Jagjot Virk are co-owners who deny that the Fight was broadcast at Sutra on the evening of September 13th. Indeed, such broadcast was impossible because Sutra did not have cable or satellite television service or any other capacity to obtain reception of the Fight on its televisions. Sutra's televisions, which were not "smart" televisions capable of receiving transmission through the internet, were only equipped to play DVD's and music CD's. Selection of the DVD and CD's on the night in question was handled by Sutra's manager, Orlando Nathan and "DJ Stixx." Defendants interviewed Nathan, staff, and co-owner Virk and they denied broadcasting the Fight at Sutra. With the exception of independent investigators hired on its behalf, Plaintiff has produced no one corroborating the allegations in its Complaint.

Mr. Shaikh's activities on the night in question involved observing patrons. He did not control the televisions and did not even arrive until approximately one hour after Plaintiff's investigator, Rebecca Fischer, left Sutra. Indeed, Ms. Fischer

1

has never seen Mr. Shaikh or Mr. Virk.

Fischer claims to have arrived at Sutra at 9:45 p.m. on September 13, 2014. However, Sutra does not open until 10:00 p.m. While to the best of her recollection, she did not pay a cover charge, such charge was in effect on the night in question. It did not vary from the standard cover charge. Fischer did not speak to any patrons. Notably, she did not see anything evidencing a "deliberate act" by Defendants to receive the Fight; no physical activity or equipment indicating reception of the Fight. She has no knowledge regarding the allegations in Paragraph 15 of the Complaint.

Fischer saw nothing in the Club itself referring or promoting the Fight. She describes the Club as having been lightly populated. She counted a maximum of 13 individuals whom she assumed to be patrons. She does not know whether they consumed any food or beverage.

There is no evidence that Defendants advertised the Fight; altered pricing on the night in question for alcohol or service; altered normal operating hours; conducted any Fight-related party or promotions.

2

Fischer alleges she went to the Club because of an advertisement she found on Instagram. All referenced advertisements produced by Plaintiff contain the wrong address and telephone number for Sutra. Further, they were posted without Defendants' knowledge or authorization by persons they had never met. Fischer did not endeavor to communicate with the persons referenced in the Instagram advertisement that she relied upon in deciding to inspect Sutra in order to ascertain whether Defendants had anything to do with such postings.

While Fischer states that she arrived at Sutra at 9:45 p.m., her video of the Fight is not time-stamped and its veracity rests on her recollection and credibility.

Notably, Fischer is paid only if she finds a violation of the subject statutes at the inspected venue. At the five venues she inspected on the night in question, she reported violations of all five.

While Shaikh is a co-owner of Sutra, there is no evidence that Sutra's business was structured in such a way as to give Shaikh a strong interest in intercepting the Fight. There is no evidence that revenues on the night in question markedly exceeded revenues on any other weekend night. Fischer and Shaikh have testified that turnout on the night in question was low.

3

Relevant Rules, Regulations, Statutes, Ordinances and Case Law:

47 U.S.C. § 553, et seq. and 407 U.S.C. § 605, et seq.

In awarding enhanced damages, courts consider factors such as "i) repeated violations over an extended period of time; ii) substantial unlawful monetary gains; iii) advertising of the broadcast; iv) charging of a cover charge or premiums for food and drinks; or v) plaintiff's significant actual damages." J & J Sports Prods., Inc. v. Just Fam, LLC, No. 1:09-cv-03072-JOF, 2010 WL 2640078, at *3 (N.D. Ga. June 28, 2010).

## Attachment "E"

## Plaintiff's Proposed Stipulated Facts

1. Defendant Midtown Haven, Inc. owns the commercial establishment known as Sutra Lounge located at 1136 Crescent Avenue, N.E., Atlanta, GA 30309-3632.

2. Plaintiff owns the exclusive commercial distribution rights to the fight program, *Floyd Mayweather, Jr. v. Marcos Rene Maidana, II – World Lightweight Championship Fight Program,* which occurred on September 13, 2014.

3. Defendants Midtown Haven, Inc. and Faisal M. Shaikh did not pay the commercial sublicensing fee for the fight program.

4. Multiple individuals posted on Twitter and Instagram that the fight program was going to be displayed at Sutra Lounge on September 13, 2014.

5. Defendant Faisal M. Shaikh had the right and ability to supervise the activities which occurred at Sutra Lounge on September 13, 2014.

## ATTACHMENT "E"

<u>Defendants' Proposed Stipulated Facts:</u>

1. Defendant, Midtown Haven, Inc. owns the commercial establishment known as Sutra Lounge located at 1136 Crescent Avenue, NE, Atlanta, Georgia 30309-3632.

2. Plaintiff owns the exclusive commercial distribution rights to the fight program, Floyd Mayweather, Jr. v. Marcos Rene Maidana, II, World Lightweight Championship Fight program, which on September 13, 2014.

3. Defendants Midtown Haven, Inc. and Faisal Shaikh did not pay the commercial sublicensing fee for the fight program.

## Attachment "F-1"

## Witnesses Plaintiff May Have at Trial

1. A corporate representative of J & J Sports Productions, Inc., 2380 South Bascom Avenue, Suite 200, Campbell, CA 95008, will testify regarding its exclusive rights to the fight program, *Floyd Mayweather, Jr. v. Marcos Rene Maidana, II – World Lightweight Championship Fight Program*.  The representative will also testify that a commercial licensing fee was not paid to J & J Sports Productions, Inc. for the fight program which was exhibited at Sutra Lounge on September 13, 2014.  The representative will also discuss how the piracy of the program affects the revenues of J & J Sports Productions, Inc.

2. Rebecca Fischer, Investigator from Innovative Investigations, 6494 Wellington Chase Court, Lithonia, GA, will testify as to the commercial exhibition of the fight program on September 13, 2014 at Sutra Lounge.  She will testify as to the number of people who were at Sutra Lounge that night, where she saw the fight, and how many televisions were in the premises.

3. Amy Harris, Investigator from Omni Present Investigations, will testify as to the commercial exhibition of the fight program on September 13, 2014 at Sutra Lounge.  She will testify as to the number of people who were at Sutra Lounge

that night, where she saw the fight, and how many televisions were in the premises.

4. DJ Quest Da Champ will testify as to the commercial exhibition of the fight program on September 13, 2014 at Sutra Lounge.

5. DJ Lavishlee will testify as to the commercial exhibition of the fight program on September 13, 2014 at Sutra Lounge.

6. Vanessa Cartagena, 2132 Sara Ashley Way, Lithonia, GA 30058-8953, will testify as to the commercial exhibition of the fight program on September 13, 2014 at Sutra Lounge.

7. Mia will testify as to the commercial exhibition of the fight program on September 13, 2014 at Sutra Lounge.

8. Martin Bradley, 1098 Colony Drive, Alpharetta, GA 30009, will testify as to Defendants' financial affairs.

9. Teajia Kaane will testify as to the social media posts regarding the commercial exhibition of the fight program on September 13, 2014 at Sutra Lounge.

ATTACHMENT "F-2"

<u>Witnesses Defendants May Have At Trial</u>:

1. Faisal Shaikh, Co-Owner of Sutra Lounge, will testify that Defendants did not exhibit the fight program, Floyd Mayweather, Jr. v. Marcos Rene Maidana, II, World Lightweight Championship Fight program, at Sutra Lounge on September 13, 2014. He will testify that the cover charge on the night in question was a standard cover charge imposed every Saturday night and does not reflect any special event taking place at Sutra Lounge on the evening in question. He will testify that the televisions at Sutra Lounge were not capable of receiving the fight program on the night in question. He will testify that he has no knowledge regarding what appeared on the televisions at Sutra Lounge on the night in question and no opportunity to control what appeared on the televisions before he arrived. He will testify that the televisions were operated by Orlando Nathan, Manager. He will testify that he neither sought nor received any enhanced monetary benefit from operation of the Sutra Lounge on September 13, 2014. He will also testify that Sutra Lounge did not conduct any special activities, parties or events pertaining to the Maidana fight and that there was no enhanced pricing with respect to admission

or with respect to beverage sales on the night in question.

2. J.J. Vigot, Co-Owner of Sutra Lounge, will testify that Defendants did not exhibit the fight program, Floyd Mayweather, Jr. v. Marcos Rene Maidana, II, World Lightweight Championship Fight program, at Sutra Lounge on September 13, 2014. He will testify that the cover charge on the night in question was a standard cover charge imposed every Saturday night and does not reflect any special event taking place at Sutra Lounge on the evening in question. He will testify that the televisions at Sutra Lounge were not capable of receiving the fight program on the night in question. He will testify that he has no knowledge regarding what appeared on the televisions at Sutra Lounge on the night in question. He will testify that the televisions were operated by Orlando Nathan, Manager. He will testify that he neither sought nor received any enhanced monetary benefit from operation of the Sutra Lounge on September 13, 2014. He will also testify that Sutra Lounge did not conduct any special activities, parties or events pertaining to the Maidana fight and that there was no enhanced pricing with respect to admission or with respect to beverage sales on the night in question.

3. Orlando Nathan, Manager, phone number 336.437.4529. Mr. Nathan was the Manager on duty at Sutra Lounge on the night in question and will testify that the televisions at Sutra Lounge did not broadcast the fight program. He will also testify that Sutra Lounge did not conduct any special activities, parties or events pertaining to the Maidana fight and that there was no enhanced pricing with respect to admission or with respect to beverage sales on the night in question.

4. Any witness identified by Plaintiff in Attachment "F-1."

## Attachment "G-1"

1. Affidavit of Rebecca Fischer

2. Affidavit of Amy Harris

3. Rate Card for September 13, 2014 fight program

4. Closed Circuit Licensing Agreement giving J & J Sports Productions, Inc. the exclusive commercial distribution rights to the September 13, 2014 fight program

5. Photographs of exterior of the Sutra Lounge from September 2014 taken by Investigator Fischer

6. Photographs of exterior of the Sutra Lounge from September 2014 taken by Investigator Harris

7. Video footage of fight program being shown inside the Sutra Lounge from September 13, 2014 taken by Investigator Fischer

8. Video footage of fight program being shown inside the Sutra Lounge from September 13, 2014 taken by Investigator Harris

9. Instagram post from DJ Quest Da Champ promoting a Fight Party at the Sutra Lounge on September 13, 2014

10. Second Instagram post from DJ Quest Da Champ promoting a Fight Party at the Sutra Lounge on September 13, 2014

11. Tweet from Twitter user DJ Quest Da Champ promoting Fight Party at the Sutra Lounge on September 13, 2014

12. Second Tweet from Twitter user DJ Quest Da Champ promoting Fight Party at the Sutra Lounge on September 13, 2014

13. Tweet from Twitter user B.P.PSM promoting Fight Party at the Sutra Lounge on September 13, 2014

14. Tweet from Twitter user DJ Lavishlee promoting Fight Party at the Sutra Lounge on September 13, 2014

15. Second Tweet from Twitter user DJ Lavishlee promoting Fight Party at the Sutra Lounge on September 13, 2014

## OBJECTIONS TO ATTACHMENT "G-2"

Defendants object to paragraphs 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15 "G-I," on grounds of authenticity; hearsay; competency, relevancy.